## VICTOR PRODUCE COMPANY v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

December 8, 1916.

Nos. 19,866, 19,925—(45, 66).

**Negligence of carrier — evidence — burden of proof.**

1. Where a common carrier receives perishable property in good condition and delivers it at destination in a frozen condition, this establishes a *prima facie* case of negligence, and the burden is upon the carrier to overcome the presumption.

**Same — verdict.**

2. The evidence does not conclusively establish that the carrier was free from negligence and the verdict must stand.

**Appeal and error — change of theory.**

3. Where a party tries his cause upon one theory, he cannot shift his ground and present it to the appellate court upon a different theory.

Action in the district court for St. Louis county to recover $661.86 for damage to a carload of eggs shipped over defendant's road. The case was tried before Fesler, J., who at the close of the testimony granted the motion of the Northwestern Railway Company for a directed verdict in its favor, and denied the motion of the Omaha Railway Company for a

1 Reported in 160 N. W. 201.
135 M—4

directed verdict in its favor, and a jury which returned a verdict in favor of plaintiff for $716.09. The motion of the Omaha Railway Company for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant Omaha Railway Company appealed. Affirmed.

*Richard L. Kennedy* and *J. B. Sheean,* for appellant.

*Benjamin L. Goldberg, H. E. Boyle, J. A. P. Neal, Edgar R. Hart* and *William T. Faricy,* for respondent.

TAYLOR, C.

In February, 1914, Merrill & Eldredge of Chicago, Illinois, shipped a carload of eggs from that city to Duluth, Minnesota, consigned to plaintiff at the latter place. They delivered the eggs to the Chicago & Northwestern Railway Company which transported them to Wyeville, Wisconsin, and there delivered them to the Chicago, St. Paul, Minneapolis & Omaha Railway Company which transported them from that place to Duluth. When the eggs were delivered at Duluth a portion of them were frozen, and plaintiff brought suit against both companies to recover the damage. At the close of the evidence, the court directed a verdict for the Northwestern Company, but submitted the case to the jury as to the liability of the Omaha company. The jury returned a verdict against that company, judgment was entered thereon, and the company appealed from the judgment.

That a portion of the eggs were frozen when they arrived at Duluth was not disputed, but both companies denied liability for the loss. By stipulation the parties fixed the amount of the loss at the sum of $716.09, and the verdict against the Omaha Company was for that amount.

Plaintiff established a *prima facie* case of negligence by showing that the eggs were in good condition when shipped, and in a frozen condition when received at Duluth, and the burden was upon the carrier to overcome the presumption. B. Presley Co. v. Illinois Cent. R. Co. 117 Minn. 399, 136 N. W. 11; Presley Fruit Co. v. St. Louis, I. M. & S. Ry. Co. 130 Minn. 121, 153 N. W. 115.

Both companies contended that the shippers gave instructions to carry the eggs to their destination without heat, and whether the shippers had given such instructions was the principal controversy at the trial. The

court charged the jury to the effect that plaintiff could not recover if the shippers had given such instructions. By returning a verdict for plaintiff the jury necessarily found that such instructions had not been given. The company insists that this finding is not warranted by the evidence.

The shippers prepared the original bill of lading without any notation thereon in respect to heat and sent it by their drayman to the Northwestern Company, who, claiming that the shippers had ordered no heat, noted upon it, "no heat by order of shipper," and then signed and returned it to the shippers. The shippers returned it to the company, and procured in place of it another or duplicate bill of lading without this notation. These transactions and the conflicting testimony in respect to them raised an issue of fact for the jury to determine, and we are unable to say that the evidence conclusively establishes that the shippers gave instructions to carry the shipment without heat.

The Omaha Company also contends that, even if no such instructions were given, the evidence is not sufficient to sustain the further finding of the jury that it failed to exercise reasonable care to guard the eggs against freezing. When they were shipped the temperature was much below the freezing point, and sank still lower as they proceeded toward Duluth. Under the regulations governing such shipments, railway companies are not required to place heat in the cars, unless the shipper furnishes the necessary heaters and fuel and a man to care for them. The shippers furnished nothing of this nature, and the court correctly instructed the jury that the regulations established pursuant to the interstate commerce act precluded the carrier from doing so. Plaintiff concedes that this instruction was correct, but insists that, as no heat was placed in the car, it should have been "round-housed" at least once while in transit. The testimony shows that in severe weather such shipments are sometimes run into a roundhouse for the purpose of warming up the car. The company insists that the evidence fails to establish a general custom to do so, and further insists that the shippers absolved it from any such obligation by directing that the car be iced instead of heated. The shippers caused the eggs to be placed in a refrigerator car, and directed the Northwestern Company to place two tons of ice in the bunkers and thoroughly "straw" the car. The company did so. It seems from the testimony that the shippers acted upon the theory that the temperature

of the ice would remain constant, and would keep the temperature of the car fairly uniform with that of the ice although the temperature outside was far below that point. Results failed to establish the correctness of this theory. The superintendent of the Lake Superior division of the Northern Pacific Railway testified that if such a shipment for such a distance, loaded as in the instant case and under the weather conditions existing in the instant case, had been made over the Northern Pacific road that road would have housed the car at some point *en route*. We think the jury had the right to consider the testimony as to "round-housing" cars containing freight which would be damaged by freezing in determining whether the Omaha Company had shown that it had exercised reasonable care in the present case, and that the question whether the Omaha Company had exercised such reasonable care in view of all the facts and circumstances shown by the evidence was for the jury, not the court.

The Northwestern Company issued a through bill of lading to the shippers, Merrill & Eldredge, and also made out a waybill on which they noted, "no heat by order of shipper," and which they delivered with the car to the Omaha Company at Wyeville. The Omaha Company now insists that it is not bound by the contract entered into between the shippers and the initial carrier and evidenced by the bill of lading, of whose terms it had no knowledge, and is relieved from liability because it followed the instructions contained in the waybill furnished it by such intial carrier, that if such instructions were unauthorized only the initial carrier, who placed them upon the waybill, is liable for the damage which resulted from following them. Plaintiff objects to the consideration of this question on the ground that it was not raised at the trial.

In its answer the Omaha Company alleged "that it transported said shipment under and by virtue of the terms of a written contract duly made and entered into by and between this plaintiff and the Chicago & Northwestern Railway Company and *this defendant*, for a valuable consideration by each received from the other, and not otherwise, a copy of which agreement is hereto attached and marked 'Exhibit A.' " It further alleged that it received a waybill, governing the transportation, with the car at Wyeville, and that it had complied with all the terms and conditions thereof. Exhibit A above mentioned is a copy of the bill of lading, and bears the notations originally placed upon the bill of lading by the North-

western Company. In the reply, plaintiff denied that the notations appearing upon Exhibit A were upon the instrument of which it purported to be a copy, but admitted its correctness in other respects.

The Omaha Company alleged, in effect, that it was a party to the original contract, and the case was tried and submitted to the jury upon that theory. The claim that it is not bound by the contract between the shipper and the initial carrier and is relieved from liability because it complied with the instructions contained in the waybill furnished by the initial carrier, now made by the Omaha Company, was not made at any time during the trial. At the close of the evidence the Omaha Company moved for an instructed verdict, but did not call attention to the point now made. It presented 14 requests for instructions to the jury, but none of them covered this point; and the court charged the jury upon the theory that the Omaha Company was bound by the contract made with the shippers. At the close of the charge the court inquired: "Any suggestions, gentlemen, or any omissions or exceptions to the charge?" To which counsel for the Omaha Company replied: "I have no exception to the charge." Neither did the company make any objection to the charge upon the motion for a new trial. The facts bring the case within the rule, settled by a long line of decisions, that where a party tries his cause upon one theory, he cannot shift his ground and present it to the appellate court upon a different theory. White v. Western Assurance Co. 52 Minn. 352, 54 N. W. 195; Laverne Citrus Assn. v. Chicago Great Western Ry. Co. 107 Minn. 94, 119 N. W. 795; Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156; Quinn v. St. Paul B. & M. Co. 128 Minn. 270, 150 N. W. 919. The judgment against the Omaha Company is affirmed.

Plaintiff appealed from the judgment in favor of the Northwestern Company, but states in its brief: "This appeal is taken simply to preserve the rights of the plaintiff against the Northwestern road in case of a reversal on the appeal of the Omaha road. If the judgment in the Omaha appeal is affirmed, this appellant will expect an affirmance on this appeal." In accordance with this consent of plaintiff, the judgment in favor of the Northwestern Company is also affirmed.