McNEILL & SCOTT COMPANY, COPARTNERS v. GREAT
NORTHERN RAILWAY COMPANY AND JOHN D.
REID, RECEIVER OF THE GRAND TRUNK
PACIFIC RAILWAY COMPANY.[1]

June 15, 1923.

Nos. 23,431, 23,432.

Service of process on receiver of Canadian railroad.

1. The courts of this state cannot acquire jurisdiction of the re-
ceiver of a Canadian railroad appointed by the Canadian authorities
by service of process in the manner provided in the third subdivision
of section 7735, G. S. 1913, for service on foreign corporations, and
the court acquired no jurisdiction over defendant Reid.

Canadian shipper must procure clearance papers.

2. Where a shipment is to be transported from Canada into the
United States, it is the duty of the shipper to procure clearance papers
authorizing its admission into the United States, and the carrier is not
responsible for a delay caused by waiting for such papers.

Question of negligent delay of carrier improperly submitted to jury.

3. There was no delay for which the carriers were responsible and
the claim of negligent delay should not have been submitted to the
jury as a ground for recovery.

Testimony improperly submitted to jury.

4. Testimony that a clerk in a freight office at a station where the
shipment was held awaiting clearance papers agreed to send it for-
ward on a certain stock train should not have been submitted to the
jury, for the agreement was invalid and plaintiffs made performance
impossible by failing to procure the clearance papers in time.

Care required from carrier of perishable freight—Burden of proof does not
shift.

5. The carrier of perishable freight is not an insurer that it will
be delivered at destination undamaged. His undertaking is to exer-
cise reasonable care to preserve and deliver it in a sound condition,

[1]Reported in 194 N. W. 614.

and he is liable only for negligence. Proof of deterioration while in his possession is prima facie evidence of negligence, but may be rebutted by proof that he was not at fault. The burden of proof does not shift from the shipper to the carrier.

**Charge to jury bad.**

6. The charge was inconsistent, contradictory and prejudicial to defendant.

Two actions in the district court for Hennepin county to recover $1,028.50; one against the Great Northern Railway Company and the other against the receiver of the Grand Trunk Pacific Railway Company. The motion of defendant Reid, appearing specially, to set aside the whole proceeding was denied by Leary, J. The cases were tried together before Buffington, J., who when plaintiff rested and at the close of the testimony denied the motions of defendants to dismiss the actions and the motions of plaintiff and defendants for directed verdicts, and a jury which returned a verdict in each case for $946.85. The motions of defendants for judgments notwithstanding the verdicts or for new trials were denied. From the judgment entered against him pursuant to the verdict, defendant Reid appealed. Judgment reversed and case dismissed. From the judgment entered against it pursuant to the verdict, defendant company appealed. Judgment reversed and new trial granted.

*Hoke, Krause & Faegre* and *William Furst*, for appellants.

*G. H. Smith*, for respondent.

TAYLOR, C.

The Grand Trunk Pacific Railway Company is a corporation created, organized and existing under and by virtue of the laws of the Dominion of Canada. Prior to the shipment in question, that company was declared insolvent, and all of its property was taken over by the government of the Dominion of Canada, and under and pursuant to the laws of that country was placed in charge of John D. Reid as receiver, who as such receiver operated its railroad during all the time involved herein.

On June 16, 1920, plaintiffs shipped a carload of potatoes from Cudworth in the province of Saskatchewan to Minneapolis in this state, over the Grand Trunk Pacific Railway from Cudworth to Winnipeg, Manitoba, and over the Great Northern Railway from Winnipeg to Minneapolis, under a through bill of lading issued by the Canadian carrier at Cudworth. Alleging that through the negligence of the carriers the potatoes had been injured by sprouting and decay while in transit, plaintiffs brought an action for damages against Reid as receiver of the Canadian road, and a separate action for the same damages against the Great Northern Railway Company. The two actions were tried together and resulted in separate verdicts in the same amount against each defendant. Motions were made by each defendant for judgment notwithstanding the verdict or for a new trial. These motions were denied and judgments were entered on the verdicts. Separate appeals were taken from the judgments, but by stipulation and the consent of the court both appeals are submitted on the same record and the same brief.

Defendant Reid challenged the jurisdiction of the court at the outset. It appears that he is operating the Canadian railroad as a receiver placed in charge of it by the Canadian government which has taken over and owns the railroad, and that neither he nor the railway company of which he is receiver has any officers, agents or property in this state, and that the process was not served upon him, nor upon any agent or person authorized to accept service of process in his behalf.

That jurisdiction of a receiver of a foreign railroad appointed by a foreign court cannot be acquired by serving process on an agent in this state for the solicitation of freight and passenger traffic over the railroad outside this state, was decided in Kading v. Waters, 137 Minn. 328, 163 N. W. 521. The statute, subdivision 3, § 7735, G. S. 1913, authorizes service in that manner only upon foreign corporations. And the Supreme Court of the United States has recently decided that service in that manner does not give jurisdiction of a foreign railway company whose operations in this state are confined to soliciting for traffic over its lines outside the state, if the plaintiff is a nonresident and the cause of action did not arise in this state

nor out of a transaction which had its origin in this state. Davis v. Farmers Co-operative Equity Co. 262 U. S. 312, 43 Sup. Ct. 556, 67 L. ed. 996.

As no process was served on defendant Reid nor on any person upon whom service could lawfully be made, the court acquired no jurisdiction over him and the judgment against him must be, and is, reversed and the action dismissed.

The complaint against the Great Northern Railway Company merely alleged in general terms that through the negligence of defendant the potatoes were injured and greatly depreciated in value by sprouting and decay while in transit, without specifying in what respect defendant had been negligent. Defendant denied any negligence and insisted that the injury resulted from the inherent nature of old potatoes to sprout and decay at that season of the year. At the trial plaintiffs claimed that the carriers had been negligent in failing to forward the shipment promptly and in failing to ventilate the car sufficiently. The car left Cudworth June 16 and arrived at Winnipeg June 18. No delay is claimed on this part of the trip. Plaintiff Scott went by passenger train from Cudworth to Winnipeg and met the car when it arrived at the latter place. The carriers could take the shipment no further until furnished clearance papers from the United States Consulate authorizing its admission into the United States. The Great Northern ran only one freight train out of Winnipeg each day. The clearance papers were not obtained from the consular officers until the afternoon of June 22, and too late for the car to be placed in the train leaving that day. It went forward in the train which left the next day, was stopped at the boundary by the customs inspector, and then proceeded to Minneapolis where it arrived on schedule time or better. Unless a carrier has undertaken to furnish special service, he is not chargeable with negligent delay where he transports and delivers a shipment in accordance with his established and published time schedules. Janesville L. S. & S. Assn. v. Hines, 146 Minn. 260, 178 N. W. 739. The delay at Winnipeg was caused by the delay in procuring the necessary clearance papers to permit the shipment to go forward. It was not the duty of the carriers to procure these clearance

papers. Van Dusen-Harrington Co. v. Canadian Pac. Ry. Co. 154 Minn. 134, 191 N. W. 411. The record shows that there was no delay for which the carriers were responsible.

Plaintiffs loaded the car themselves. They placed potatoes in each end of it in bulk, and piled potatoes in sacks across the middle of the car between the doors to hold those at the ends in place. There was evidence to the effect that plaintiffs, for the purpose of ventilation, fastened one door so that it would remain open about 3 feet and the other so that it would remain open about 18 inches, and that when the car reached Minneapolis neither of these doors was open more than 4 inches. The evidence made a question for the jury as to whether defendant had negligently failed to keep the car properly ventilated and thereby caused the potatoes to become heated and damaged, and defendant's motion for judgment notwithstanding the verdict was correctly denied. But a new trial must be granted for errors occurring at the trial and in the charge and refusal to charge.

The car arrived at Winnipeg in the evening of June 18. Plaintiff Scott testified that he had an interview with the chief clerk at the local freight office of the Great Northern at Winnipeg on the morning of June 19 in which that clerk agreed to send the car forward the next day on a stock train. Defendant made a motion to strike out this testimony and later requested the court to instruct the jury to disregard it. Both were denied. In the charge the court called attention to the evidence in respect to the delay at Winnipeg and in respect to the necessity of procuring clearance papers before the shipment could go forward, and, without informing the jury that it was the duty of plaintiffs to procure these papers, although requested by defendant to so instruct them, told them that it was the duty of the carrier to take every means which an ordinarily prudent person would take under like circumstances to carry the shipment forward with reasonable dispatch, that this duty was a little higher in case of perishable commodities such as potatoes than in the case of dead freight, and then, in substance, directed the jury to determine whether defendant had forwarded the shipment with reasonable dispatch. The testimony referred to above was improperly

admitted and should have been stricken. There is no evidence that the clerk had authority to make such an agreement, and positive evidence that he had not. He denied making it, and defendant ran no stock trains from Winnipeg that season. There was no consideration for the agreement. The contract for carriage had been made before Scott left Cudworth and contained no provision for special service. But passing these and other considerations which might be mentioned, the shipment could not proceed on any train without clearance papers, and by failing to furnish them plaintiffs themselves made performance of the agreement impossible, conceding it to have been made. The shipment went forward on the first available train after the clearance papers were furnished, and the evidence will not justify a finding that there was any delay for which the carriers were responsible. It follows that the court erred in submitting the claim of negligent delay to the jury as a ground for recovery.

It is the general rule that a common carrier is an insurer that freight received for transportation will be delivered at destination undamaged, but there are exceptions to this rule. He is not an insurer that perishable freight, which term includes such commodities as fruits and vegetables, will be delivered at destination undamaged. His undertaking in transporting such commodities is to exercise reasonable and ordinary care to preserve and deliver them in a sound condition. If they arrive in an unsound condition, he is not liable in the absence of evidence that negligence on his part caused, or aided in causing, the damage. Evidence that the shipment was in sound condition when received by him and in an unsound condition when delivered at destination is prima facie proof that the damage was caused by his negligence, but he may rebut this presumption by showing, in any way that he can, that he was not at fault. George B. Higgins & Co. v. Chicago, B. & Q. R. Co. 135 Minn. 402, 161 N. W. 145, L. R. A. 1917C, 507. The court instructed the jury that:

"A common carrier is an insurer of the safe transportation of goods committed to it for that purpose and responsible for all damages to the same while in transit, unless such damage is occasioned

by certain excepted causes, and to relieve itself from such liability the carrier must show that the damage arose solely from one or more of the excepted causes, and it avails it nothing to show that the shipper was negligent if the damage would not have resulted except for the concurring fault of the carrier."

The jury could understand from the charge that the above rule applied to the shipment in question, although the court gave a request of defendant to the effect that a carrier is not an insurer that perishable freight will be delivered in an undamaged condition.

Defendant requested an instruction to the effect that plaintiffs had the burden of proving negligence. The court refused this instruction, and charged the jury that plaintiffs sustained the burden of proof in the first instance by showing that the carriers received the shipment in good condition and delivered it in a damaged condition, and that it was then "incumbent upon the defendants, and each of them, to show by a fair preponderance of evidence that they were free from negligence."

The defendants were not required to show by a preponderance of the evidence that they had not been negligent; they were merely required to rebut the presumption of negligence arising from the fact that the potatoes had deteriorated while in their possession. The burden of proof was on plaintiffs throughout the trial. Whitaker v. Chicago, St. P. M. & O. Ry. Co. 115 Minn. 140, 131 N. W. 1061.

The court instructed the jury that it was the duty of the carrier to see that the car was properly ventilated if it needed ventilation. It was the duty of the carrier to exercise reasonable care, in view of all the circumstances, to keep the car properly ventilated. They were not subject to an absolute duty to see that it had proper ventilation.

It seems that plaintiffs' counsel had argued to the jury that the car furnished for the shipment was not suitable. No such claim had been made in either the pleadings or the evidence, and defendants requested an instruction that the suitableness of the car was not in issue. Instead of instructing as requested, the court told the jury that it was the duty of the railroad company to furnish a suit-

able car for the transportation of the particular class of goods intended to be shipped. The instruction was correct enough as a proposition of law, but it tended to confuse the jury by presenting to them a question not in issue.

The charge taken as a whole was inconsistent and contradictory and likely to confuse and mislead the jury. This is a sufficient ground for a new trial. 2 and 3 Dunnell, Minn. Dig. §§ 7167, 9781.

The judgment against the Great Northern Railway Company is reversed and a new trial granted.

On July 13, 1923, the following opinion was filed:

PER CURIAM.

In a petition for reargument plaintiff takes exception to the statement in the opinion that the suitableness of the car was not in issue. Plaintiff says that it has been the practice for the shipper to show that the carrier received the goods in good condition and delivered them in a damaged condition and then rest on the prima facie case thus established, and for the carrier in rebutting the inference of negligence arising from those facts to show that it furnished a car suitable for the shipment. But plaintiff did not proceed in that manner in the present case. In its case in chief, it undertook to prove the specific negligence with which it charged the carriers, and the carriers in turn directed their evidence to a refutation of these charges.

Plaintiff also notes the statement that the carriers were not required to prove freedom from negligence by a preponderance of the evidence but merely to rebut the inference of negligence, and calls attention to a provision of the Canadian bill of lading under which the shipment moved that "the burden of proving freedom from such negligence or omission shall be on the carrier." This provision would place on the carriers the burden of proving freedom from negligence affirmatively, unless in conflict with the tariffs and shipping regulations established under the interstate commerce law. Neither of these matters affects the result reached, and we add this

statement merely to guard against a misconstruction of language used in the opinion.

The application for a reargument is denied.